# Rothschild's Assigned Estate (No. 1).

*Assignment for creditors—Compensation of assignee—Attorney's fees—Services of assignor.*

1. The finding of an auditor confirmed by the court below allowing an assignee for creditors $400 as compensation for his services, will not be set aside where the evidence shows that the assignee entered a bond for an estate appraised at about $13,000, that he was in fact responsible for about $10,000 of property, that he sold about $4,000 of goods at a price more than $1,000 above their appraised value, and the testimony of competent witnesses, not in any way contradicted, was that the compensation was reasonable.

2. The compensation of a trustee of any character may be arrived at as a matter of convenience by way of percentage on the amount of receipts and disbursements, but after all it is a question not of percentage, but of compensation. It, therefore, comes to nothing to say the percentage is large, or the percentage is small, as compared with the estate, if the trustee has received neither less nor more than what his services are worth.

3. An attorney for an assignee for the benefit of creditors is properly allowed $300 for his services, where it appears that he prepared the deed of assignment and other legal papers, and notices connected with the assignment, that he took charge of thirty-four cases pending against the assignor at the time of the assignment, and generally advised the assignee in a great number of legal matters.

4. An allowance by an auditor of compensation to an assignor for services rendered to his assignee for creditors, will not be set aside by the appellate court, where the auditor's report is confirmed by the court below, and his finding is based upon sufficient evidence, and there is no manifest error.

Argued April 10, 1911, by M. E. Towne Furniture Co. and Oliver Brothers Co., from order of C. P. Crawford Co., Sept. T., 1908, No. 101, confirming exceptions to auditor's report in Assigned Estate of Alexander Rothschild. Before RICE, P. J., HENDERSON, HEAD, BEAVER, and PORTER, JJ. Affirmed.

Exceptions to report of John A Norton, Esq., auditor. The opinion of the Superior Court states the facts.

*Error assigned* was in dismissing exceptions to auditor's report.

*Otto Kohler*, for appellants, cited: Sprenkel's App., 16 W. N. C. 402.

*Frank J. Thomas*, of *Thomas & Thomas*, with him *Otto A. Stolz*, for appellee, cited: Willock v. R. R. Co., 229 Pa. 526; Bousquet's Est., 206 Pa. 534; Hess's Est., 150 Pa. 346, Scheppers's App., 125 Pa. 598; Logue's App., 104 Pa. 136; Rankin v. Rankin, 224 Pa. 514; Mumma's App., 127 Pa. 474.

OPINION BY RICE, P. J., July 13, 1911:

The appellant and other creditors filed eleven exceptions to the account of the appellee, all of which, excepting two, were overruled by the auditor. Having found that the two exceptions were meritorious, the auditor reported that the accountant should bear a part of the expense of the audit, and accordingly directed that one-third of the costs should be paid by him and two-thirds by the exceptants. Exceptions were filed by the latter to his report, and from the decree overruling them two of the excepting creditors took separate appeals. As the appeals involve the same question they were argued together, and what we shall say in reference to this is intended to apply as well to the appeal of the Oliver Brothers Company. The matters complained of, aside from the imposition of a portion of the costs of audit upon the exceptants, are the allowances of the credits claimed by the accountant (1) of $400 as his compensation, (2) of $300 paid to his attorneys for their services, and (3) of $300 paid to the assignor for services. It is claimed that these are excessive.

1. It appears that the assignor, who was a wholesale and retail dealer in furniture, made an assignment for the benefit of creditors to the accountant on June 29, 1908; that the accountant took possession and proceeded to

convert the assets until he was relieved, in September of the same year, by the order of the United States district court adjudging the assignor a bankrupt; and that, according to his testimony, which is uncontradicted, he gave most of his time, between the assignment and the turning over of the property to the trustee in bankruptcy, to the duties of assignee. His accounts showed that he realized from the sale of such property as he disposed of, about $1,000 more than its appraised value. The auditor found that there was no mismanagement of the assets by the accountant or failure on his part to account for them. He also found that, by reason of the fact that the goods turned over to him were located at several different places, the care, handling and management of them were necessarily of a different and more onerous nature than if they had been located at a single place, and that, in view of these and other facts, the regulation of his compensation for all of his services by a commission of five per cent on the amount received for goods sold would be unjustifiable. We quote from his report. "He took charge of, became responsible for and entered a bond covering an estate which was appraised at about $13,000. When the bankruptcy proceedings were instituted, he still had in his possession, had cared for, attempted to make sale of and been responsible for more than $10,000 of said property, and turned the same over to the trustee in bankruptcy. He had sold about $4,000 worth of goods and certainly his compensation for his labor upon, and with reference to the whole stock of goods should not be gauged by a commission on the amount actually sold. Commissions on what was sold might well regulate his compensation for his labor, care and liability with reference to that quantity of the goods, but certainly would not be a proper regulation of his services with regard to the goods not sold through no fault of his." It should be stated, in connection with the evidence as to the nature and extent of the services rendered by the assignee, that testimony was given, by witnesses competent to express

an opinion on the subject of the reasonable compensation for services and responsibility of that character, that the charge was not excessive.   The exceptants introduced no testimony to the contrary.   The auditor's conclusion upon the whole matter was that the compensation claimed by the accountant was reasonable.   We cannot say that this conclusion, which was approved. by the court, was unwarranted by the evidence, and it is very clear that it involves no error of law.   "The compensation of a trustee, of any character, may be arrived at, as a matter of convenience, by the way of a percentage on the amount of receipts and disbursements.   But, after all, on all authority, it is a question, not of percentage, but of compensation.   When the court has fairly responded to the interrogatory, how much has the trustee earned? it has discharged its whole duty in the premises.   It, therefore, comes to nothing to say, the percentage is large or the percentage is small as compared with the estate, if the executor has received neither less nor more than what his services are worth:" Montgomery's Appeal, 86 Pa. 230.   This, it was said in the same case, was in effect but a restatement of the doctrine of Harland's Accounts, 5 Rawle, 323; that, though the compensation is "usually awarded in the form of commission, the rate is not determinable by any established practice or rule, being graduated to the responsibility incurred, the amount of the estate and the sum of the labor expended.   It may be awarded even in a gross sum, according to a common practice in the country, which I take to be the preferable one, as it necessarily leads to an examination of the nature, items and actual extent of the services, which the adoption of a rate per cent has a tendency to leave out of view.   To adopt the same rate in all cases, would often produce a monstrous overcharge."   And, it may be added, it might often result in an allowance which, in view of special and extraordinary services rendered and responsibilities incurred, would be entirely inadequate compensation.   After citing and quoting from these and

other cases, Mr. Justice MESTREZAT said: "It will be observed, therefore, that the rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed.   In arriving at the compensation to which a trustee in any capacity is entitled, it is necessary to consider the amount of the estate, the labor performed and the responsibility imposed."   Further on in the opinion he says: "The safer rule, therefore, to be adopted and followed in remunerating a trustee for his services is the simple one that he be compensated for the services performed and the liability incurred:" Harrison's Est., 217 Pa. 207.   See also Bosler's Est., 161 Pa. 457; Coleman's Assigned Est. (No. 1), 200 Pa. 29; Casely's Est., 23 Pa. Superior Ct. 646.

2. In support of the allowance for attorney's fees, counsel for appellee refer us to the evidence showing that, in addition to the preparation of the deed of assignment and other legal papers and notices connected with the assignment and the subsequent proceedings, there were thirty-four cases pending in the common pleas against the assignor at the time of the assignment; that as counsel for the accountant they were consulted and gave legal advice as to each case; that legal advice was given to him in regard to the successive steps taken in the assignment proceedings; that they advised him, at different times, upon other matters, amongst which are mentioned insurance of the property, leases of the premises, attachment of certain funds of the estate, with reference to property that had been stopped in transit, as to making sales in bulk, as to the right of the assignor to have property set aside to him under the exemption law, as to questions which arose upon the adjudication in bankruptcy and the turning over the property to the trustee in bankruptcy.   The auditor sums up the matter by saying: "The testimony in this case showed that the services, for which said charge was made, were rendered wholly for the benefit of the assigned estate, and that, considering the nature of the estate, and the character and

extent of the services rendered, the charge made was reasonable and no evidence was offered in contradiction of this." The fact that the accountant employed more than one attorney, who consulted together with regard to each step of the proceedings, cannot affect the question, if the charge was not an unreasonable one to be made by a single attorney who did all the work. A careful consideration of all the evidence has failed to convince us that the auditor and court erred in concluding that it was not excessive.

3. The accountant testified, and in this he was uncontradicted, that he employed the assignor to assist him, with the assent of the appellants or their counsel. It is true there is no evidence that they agreed to the compensation he was to receive, and, therefore, they are not estopped to question the reasonableness of the amount paid. But they introduced no testimony on the subject, and we cannot say that the auditor was not justified, by the evidence introduced by the accountant, in finding that the assignor was employed by the accountant in good faith, because, by reason of his knowledge of the stock of goods, he could render more valuable assistance than anyone else he could employ; that the services performed were for the benefit of the estate and its creditors; and were worth the amount paid. This, like the other questions raised, was largely a question of fact.

Considering the three items in the aggregate, the expenses of administration of the estate seem large. But it is to be borne in mind that it is only for clear error in fact or law that the finding of an auditor, which has been approved by the court, will be set aside on appeal. This principle is so well settled, and so frequently called attention to in the decisions, that we do not deem it necessary to cite any authority in support of it. Our conclusion is, that there was no such clear error as would justify us in sustaining the assignments heretofore considered.

4. With regard to the imposition of a portion of the costs on the exceptants, nothing need be said, since it is

practically conceded, in the appellant's brief of argument, that, if this court shall conclude that there was no error in the other matters complained of, it is probable that this assignment will fall with the others.

The decree is affirmed and the appeal dismissed at the costs of the appellant.