Klein et al. *v.* Dunn, Receiver, Appellant, et al.

Argued January 25, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Russell H. Yoder,* for appellant.

*Randolph Stauffer,* for appellees.

OPINION BY MR. JUSTICE BARNES, March 25, 1940:

The Reading National Bank, now The Reading National Bank and Trust Company, was the trustee under a mortgage dated January 20, 1925, upon premises Nos. 122-130 North Front Street, in the City of Reading, in the principal sum of $50,000, given by The Catholic Literary and Social Union, a corporation, to secure an issue of bonds in the same amount.* The mortgagor failed to pay the taxes assessed against the premises for the year 1930, and defaulted in the payment of interest on January 20, 1931. With the exception of the

---

* The maturity date of the bonds is not stated in the record.

sum of $200 paid on account, the mortgagor has made no further payment of interest since that time, and no part of the principal debt has been paid.

From January 20, 1931, to July 20, 1932, the Reading Bank advanced from its own funds amounts totaling $5,880 to the holders of the bonds, without disclosing to them that there had been a default in the payment of interest, or that the sums so paid were advancements. The Reading Bank thereafter became insolvent, and on October 27, 1934, a receiver was appointed whose successor is the present defendant.

The plaintiffs, who hold some of the mortgage bonds as trustees under the will of Conrad Klein, filed this bill in equity asking for the appointment of a substituted trustee to succeed the Reading Bank as trustee under the mortgage. Defendant's answer made no objection to the appointment of the substituted trustee. However, under the heading of new matter defendant included a "First and Final Account" of the administration of the trust by the Reading Bank, in which a credit was taken for the $5,880 advanced to the bondholders. For this amount the defendant claimed to be entitled to reimbursement by the substituted trustee, "from the first available funds in its hands," and asked that the overdraft be decreed a lien upon the mortgaged premises, which are now under the management of trustees for a majority of the bondholders.

The chancellor permitted defendant to retain the $200 which had been paid on account of interest in arrears, but refused to allow the credit for the balance of the advancements. However, defendant was granted the right to renew the claim for reimbursement upon the final accounting of the substituted trustee. Defendant's exceptions were dismissed by the court in banc, and a final decree was entered directing that upon the accounting of the substituted trustee, defendant's claim for recoupment should be subordinated to the full dis-

charge of the mortgage obligation to the bondholders. This appeal by the receiver of the bank followed.

As plaintiffs have made no objection to the retention of the $200 paid on account, we are here concerned with the question whether the receiver is entitled to priority in reimbursement for the balance of these advancements, or whether his claim must be postponed to those. of the bondholders.

A trustee who has made unauthorized and voluntary advancements of interest, without disclosing that fact to the cestuis que trustent, cannot assert a right of general recoupment against either the beneficiaries or the trust estate. As we said in *Media-69th Street Tr. Co.'s Tr. Mtge. Pool Case,* 329 Pa. 587, 591: ". . . his right of reimbursement is limited to the income thereafter earned upon the identical investments on which the advancement was made. If the particular interest advanced is subsequently collected, the trustee may obtain reimbursement therefrom, and the transaction is closed. If the particular interest advanced cannot be collected, the transaction remains open, and any loss arising therefrom must be borne by the trustee who volunteered the payment." See also: *Klein's Est.,* 326 Pa. 393; *Nauman's Est.,* 110 Pa. Superior Ct. 55.

In the case of the Media-69th Street Trust Company, the trustee had already collected approximately $7,300, which admittedly represented "the particular interest advanced," and as to that amount we indicated that there was a right of recoupment. Nevertheless, we held that the claim was prematurely made, inasmuch as the final account of the substituted trustee had not yet been filed.

It does not follow from the fact that advancements for delinquent interest have been made to bondholders under the circumstances here present that such advances must be reimbursed from the first moneys paid upon the mortgage, or that the payments so received shall be treated arbitrarily as repayment of the "particular in-

terest advanced." It must be remembered that these advancements were made without any indication to the bondholders that the mortgagor had defaulted, and that they were kept in ignorance of the impairment of their investment for a period of two years thereafter. Had they known the true situation, they could have immediately instituted foreclosure proceedings, or taken other appropriate action to protect their rights. Instead they were lulled into a false sense of security by acts of the trustee Bank amounting to a representation that there had been no default.

In view of these circumstances, it would be inequitable to permit the trustee Bank to assert that the interest payments for which the advances were made were not in fact paid by the mortgagor, if the assertion would work prejudice to the bondholders: *Paine v. Bank,* 194 Pa. 403. See also *Fedas v. Ins. Co. of State of Penna.,* 300 Pa. 555. The present defendant as receiver would be similarly estopped since he stands in the shoes of the insolvent trustee Bank: See *Cameron v. Christy,* 286 Pa. 405. Nor are plaintiffs required to show specifically the extent to which they have been injured by reliance upon the trustee Bank's representation, for it is sufficient that they were deprived of an opportunity to assert their rights promptly against the mortgagor. See *Paine v. Bank,* supra, (p. 407).

We must, therefore, in determining the status of defendant's claim, treat the payments so advanced by the Reading Bank as having been paid by the mortgage debtor. From this it follows that all future payments of interest to the substituted trustee must be deemed to be for amounts accruing upon the mortgage subsequent to the advancements, rather than for "the particular interest advanced" by the trustee Bank, except where there shall be an overplus remaining after the claims of the bondholders have been discharged in full. Defendant's right of recoupment must be limited strictly to such overplus.

In *Coffey v. Lawman*, 99 F. (2d) 245 (C. C. A. 6th), the facts closely resemble those of the present case, and the court reached the same result, saying (p. 248): "Equity requires that the bank and its receiver be subordinated to the certificate holders as to the specific security of underlying mortgages on which interest was paid in advance of collection. This salutary rule will remove the strong temptation to trustees to act for their own advantage to the detriment of the cestuis que trustent."

In volunteering these advancements without disclosure of the default, the Reading Bank violated its duty as a fiduciary to inform the cestuis fully of all matters affecting their interest, and accordingly it must be held to have assumed the risk that the particular installments of interest advanced might never be repaid. In *Commonwealth Trust Co. Case*, 331 Pa. 569, where advancements by the trustee had been rendered necessary through improper use of certain trust funds, we said (p. 580): "Under the circumstances, the Trustee cannot claim a priority in order to recoup itself for loans made necessary by its own misconduct. This claim can be asserted only after the bondholders have been paid in full."

Defendant's contention that the voluntary payments were beyond the statutory powers of a national bank to make, in that they amounted to a gift of the fund, and that therefore they are recoverable by the receiver, cannot be sustained. As we have said, the making of the advancements gave rise to a limited right of reimbursement from subsequent receipts, and it is clear that recoupment was contemplated when the payments were made. Moreover, it is conceivable that the Reading Bank may have expected to benefit by protecting its reputation with regard to the securities which it had sold and sponsored.

The court below, having ruled against defendant upon the principal issue raised by its answer to the bill, im-

posed the costs of the proceeding upon defendant. In so doing there was no error since the litigation was concerned primarily with the receiver's claim for reimbursement.

The decree is affirmed. Costs to be paid by the appellant.